IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLENA A. CALICE,

      Plaintiff,                               Case No. 20-cv-

vs.                                       Hon.

GSA521 LLC,
and KIKI DOE,

      Defendants.

_____/

HERTZ SCHRAM PC
By:  Daniel W. Rucker (67832)
     Steve J. Weiss (P32174)
Attorneys for Plaintiff
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302-0183
(248) 335-5000
drucker@hertzschram.com
sweiss@hertzschram.com

_____/

**COMPLAINT AND JURY DEMAND**

     Now comes Plaintiff, Olena A. Calice, by and through her attorneys, Hertz

Schram PC, and for her Complaint and Jury Demand, states as follows:

**PARTIES**

    1.    Plaintiff Olena A. Calice ("Calice") is a resident of the County of

Oakland, State of Michigan.

{H0737637.3}

2. Defendant GSA521 LLC ("GSA") is a Domestic Profit Corporation doing business in the County of Oakland, State of Michigan and maintaining a facility in Auburn Hills, Michigan.

3. Defendant Kiki Doe ("Kiki"), whose last name is presently unknown, is an owner and manager of GSA and does business in the County of Oakland, State of Michigan.

## JURISDICTION AND VENUE

4. Jurisdiction and venue are proper in the Eastern District of Michigan, Southern Division, as Defendant GSA is licensed to do business and is doing business in Michigan and conducts business in the Eastern District of Michigan, Southern Division, particularly in Oakland County Michigan; Kiki co-owns and manages GSA; and a substantial part of the events or omissions giving rise to this action occurred in Oakland County, Michigan. *See* 28 U.S.C. § 1391(b)(1)-(2),(c) (re venue, individual, and entity defendants); 28 U.S.C. § 102(a)(1) (re counties in the Southern Division). In addition, jurisdiction is proper pursuant to 29 U.S.C. § 201 *et seq.* (the Fair Labor Standards Act of 1938, or "FLSA") and 28 U.S.C. § 1331 regarding federal question jurisdiction.

## GENERAL ALLEGATIONS

5. Defendants GSA and/or Kiki are franchisees of a 7-Eleven store located in Auburn Hills, Michigan.

6.     Calice began working for Defendants at the 7-Eleven store at least as early as November 8, 2019.

7.     Calice's employment terminated with Defendants on or about February 8, 2020.

8.     Calice regularly worked more than 40 hours per week without receiving overtime compensation for all of the hours worked.

9.     Calice worked at least 50 hours per week while employed by Defendants.

10.    During at least 5 weeks of work, Calice worked 53 hours or more per week, which involved 5 shifts during the week and one shift on the weekend.

11.    During at least 3 weeks of work, Calice worked 63 hours or more per week, which involved 5 double shifts during the week and one shift on the weekend.

12.    In the 13 full weeks that Calice worked for Defendants, Calice worked at least 175 hours of total overtime and was not properly compensated at 1.5 times the regular rate for every overtime hour.

13.    Defendants refused to train Calice on how to access her pay information through Defendants' online system, so Calice was unable to determine how much, if any, overtime pay she was receiving at any time during her employment with Defendants.

14.     The first time Calice had an opportunity to see her time records was after her employment with Defendants had been terminated despite Calice's repeated requests.

15.     Defendants paid Calice by adding an amount to a prepaid credit card on a weekly basis.

16.     Defendants provided Calice with the prepaid credit card, but the card was not in Calice's name, and Calice had no ability to contact the prepaid credit card company to obtain any information about the account accept to obtain the balance on the card through an automated system.

17.     Calice did not have the opportunity to take a lunch break during her work.   Defendants employed only a couple workers per shift and required the employees to respond to customers at all times.

18.     Calice received weekly pay of $10.50 per hour beginning in November 2019 and was designated as an hourly employee on her time sheets.

19.     In pay periods up until December 13, 2019, Defendants paid Calice a portion of the overtime compensation she earned in those pay periods.

20.     Beginning on December 13, 2019, Defendants began paying Calice a salary of $525 per week, which equates to $13.13 per hour for a 40-hour workweek.

21.     Beginning on December 13, 2019, Defendants ceased recording Calice's overtime hours worked and also ceased compensating Calice for any overtime worked.

22.     Kiki, on behalf of herself and GSA, informed Calice that she would be considered a salaried employee, and instructed Calice not to clock-in or clock-out, but Calice objected and requested that she receive overtime compensation regardless of her designation as salaried.

23.     Defendants refused to pay Calice overtime and misrepresented to Calice that she was not entitled to overtime pay simply because Defendants designated her as a salaried employee.

24.     Defendants failed to pay Calice a full salary of $525 in the pay period beginning January 17, 2020, in which Defendants paid only $441.

25.     Defendants failed to pay Calice a full salary of $525 in the pay period beginning January 24, 2020, in which Defendants paid only $210.

26.     For the pay period starting January 31, 2020, Defendants paid Calice $315 in "Salary OT."

27.     However, the $315 in "Salary OT" did not even cover the $399 in unpaid salary from the January 17, 2020 and January 24, 2020 workweeks.

28.      Defendants failed to maintain records regarding Calice's wages and hours as required by the FLSA regulations, including 29 CFR § 516.2.

29.    Calice's job duties at the 7-Eleven store involved waiting on customers, handling the cash register, stocking shelves, cleaning the store, and making food and coffee.

30.    Calice did not direct or supervise the work of others.

31.    Calice had no management or executive duties.

32.    Calice never hired or fired anyone on behalf of Defendants and had no authority to do so.

33.    When Calice objected to working for a salary without payment of overtime, Defendants took adverse action, including threatening Calice with undesirable work schedules and then compelling Calice to work double shifts for three weeks that caused her to work more than 63 hours per week without any compensation for the 23 hours of overtime each week and failing to pay even the full promised salary in at least one week.

34.    Only when Calice threatened to quit working did Defendants cease compelling Calice to work double shifts, but Defendants continued to refuse to pay Calice for overtime she worked.

35.    In response to Calice's objections to being underpaid, Defendants compelled Plaintiff to work additional uncompensated overtime hours, and substantially reduced her pay below the purported "salary" amount in two pay periods even though Calice worked more than 40 hours in both weeks.

{H0737637.3}                                                      6

36.     By their refusal to properly compensate Calice, their failure to inform Calice of the details of her compensation, and the retaliatory actions following Calice's complaints, Defendants constructively discharged Calice.

**Others Affected**

37.     Pursuant to statements by Kiki, Defendants own and/or operate two additional 7-Eleven franchise stores.

38.     Other employees are similarly situated to Calice in terms of Defendants' denial of overtime compensation.

39.     One female employee works numerous overtime hours each week and is labeled a "manager" even though nearly all of her work involves the same non-management duties as Calice.

40.     One male employee, the son of the above-referenced female employee, works numerous overtime hours every week and recently terminated his employment because Defendants refused to compensate him for his overtime hours.

41.     A second female employee worked 3 days in a week with Calice but also worked multiple shifts in a week at another 7-Eleven store owned by Defendants, resulting in substantial overtime hours.

**Other Misconduct**

42.     Defendants also required, as a matter of store policy, that Calice and

other employees engage in behavior that violated statutory laws and policies of Michigan.

43.   When a customer wished to purchase alcohol but failed to produce identification that established the customer's age, Defendants required Plaintiff and other workers to scan one of Defendants' co-owners' driver licenses in order to bypass the store's electronic records system and enable the sale to the customer.

44.   The driver license often used by Defendants was that of Defendant Kiki's husband, also a co-owner of GSA, on information and belief.

45.   Defendants kept the driver license affixed to the bottom of the counter below the cash register so that any employee using the cash register could simply reach under the counter and scan the driver license and continue with the sale of alcohol to a customer who could not provide identification establishing the customer's age.

46.   In addition, in order to avoid paying overtime or other payroll taxes, at various times Defendants required employees to clock-out and continue to work off the clock.

47.   In some cases, Defendants paid workers in cash for such off the clock work, but Defendants did not pay workers for the overtime amounts owed.

48.   Defendants also required employees to change the "sell by" dates on expired food so that the food could remain on the store shelves for purchase by

customers.

## COUNT I
## FAILURE TO PAY OVERTIME COMPENSATION
## IN VIOLATION OF THE FLSA

49.     Plaintiff incorporates the foregoing allegations as if fully stated herein.

50.     Defendants are employers covered by the FLSA, 29 U.S.C. §201 *et seq.*

51.     Plaintiff is an employee within the coverage of the FLSA.

52.     Pursuant to 29 U.S.C. § 207, Defendants were required to pay Calice one and one-half (1.5) times her regular rate for all hours worked in excess of 40 per week.

53.     Defendants failed to pay Calice for hours worked in excess of 40 per week.  Defendants did not pay Calice either at a straight rate or a 1.5 overtime rate for hours in excess of 40 per week.

54.     Defendants willfully failed to pay Calice overtime compensation in violation of the FLSA.

55.     Defendants are liable to Calice in the amount of her unpaid compensation, including a 1.5 overtime rate, an additional equal amount as liquidated damages, a reasonable attorney's fee, and costs of the action.

56.     Calice has suffered damages, including lost compensation, as the

direct and proximate result of Defendants' violation of the FLSA.

Wherefore, Plaintiff Calice seeks recovery in the amount of her unpaid compensation, including a 1.5 overtime rate, an additional equal amount as liquidated damages, a reasonable attorney's fee, and costs of the action, as well as any other legal or equitable relief the Court deems just and necessary.

## COUNT II
## RETALIATION
## IN VIOLATION OF THE FLSA 29 USC § 215(a)(3)

57. Plaintiff incorporates the foregoing allegations as if fully stated herein.

58. Plaintiff objected to Defendants' refusal and failure to pay overtime and complained to Defendants' management regarding the same.

59. After Plaintiff objected to Defendants' refusal and failure to pay overtime, Defendants retaliated against Plaintiff in the material terms of her employment, including threatening Plaintiff with undesirable work schedules and forcing Plaintiff to accept such undesirable work schedules, compelling Plaintiff to work additional uncompensated overtime hours, and substantially reducing Plaintiff's pay below the purported "salary" amount in two pay periods even though Plaintiff worked more than 40 hours in both weeks, resulting in Plaintiff's constructive discharge.

60.     Plaintiff was exposed to adverse employment action and constructively discharged as a direct and proximate result of complaining to Defendants regarding unpaid overtime and requesting lawful compensation for overtime worked.

61.     Plaintiff suffered damages as a result of Defendants' retaliatory actions.

Wherefore, Plaintiff Calice seeks recovery in the amount of her unpaid compensation, including a 1.5 overtime rate, an additional equal amount as liquidated damages, as well as the lost value of employment, reinstatement, and promotion, together with a reasonable attorney's fee, and costs of the action, as well as any other legal or equitable relief the Court deems just and necessary.

## COUNT III
## VIOLATION OF PUBLIC POLICY

62.     Plaintiff incorporates the foregoing allegations as if fully stated herein.

63.     The State of Michigan enforces a long-standing public policy imposing upon persons and entities licensed to sell alcohol with the duty to make "diligent inquiry" into whether the customer purchasing the alcohol is a "minor," defined as a person under 21 years of age. *See*, *e.g.*, MCL 436.1701(1) (imposing duty of diligent inquiry); MCL 436.1109(6) (defining "minor").

64.    Defendants were not entitled to sell alcohol to the public without being licensed by the State of Michigan. MCL 436.1203.

65.    In order to make a "diligent inquiry" before selling alcohol to a customer, Defendants were required to make "a diligent good faith effort to determine the age of an individual, which includes at least an examination of an official Michigan operator's or chauffeur's license, an official Michigan personal identification card, a military identification card, or any other bona fide picture identification that establishes the identity and age of the individual." *See*, *e.g.*, MCL 436.1701(10)(b) (defining "diligent inquiry").

66.    Defendants implemented a policy that required its employees, including Plaintiff, to ignore the "diligent inquiry" requirement and instead to scan one of Defendants' co-owners' driver's license when a customer wished to purchase alcohol but failed to produce identification that established the customer's age.

67.    Defendants exposed Plaintiff and her co-workers to potential criminal penalties by enforcing its policy of bypassing the "diligent inquiry" requirement.

68.    Plaintiff could not continue to work for Defendants and violate the "diligent inquiry" requirement, so Plaintiff was subjected to constructive discharge.

69.    Plaintiff suffered damages as a result of Defendants' violation of public policy and retaliatory actions.

Wherefore, Plaintiff Calice seeks damages, including the lost value of employment, reinstatement, and promotion, together with a reasonable attorney's fee, and costs of the action, as well as any other legal or equitable relief the Court deems just and necessary.

Respectfully submitted,

HERTZ SCHRAM PC

By:     */s/ Daniel W. Rucker*
   Daniel W. Rucker (67832)
   Steve J. Weiss (P32174)
   Attorneys for Plaintiff
   1760 S. Telegraph Rd., Ste. 300
   Bloomfield Hills, MI 48302-0183
   (248) 335-5000
   drucker@hertzschram.com

Dated: April 3, 2020   sweiss@hertzschram.com

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues that may be so heard.

Respectfully submitted,

HERTZ SCHRAM PC

By:     */s/ Daniel W. Rucker*
   Daniel W. Rucker (67832)
   Steve J. Weiss (P32174)
   Attorneys for Plaintiff
   1760 S. Telegraph Rd., Ste. 300
   Bloomfield Hills, MI 48302-0183
   (248) 335-5000
   drucker@hertzschram.com

Dated: April 3, 2020   sweiss@hertzschram.com